**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| Kayla Cox | ) | |
| | ) | |
| | ) | COMPLAINT |
| | ) | JURY TRIAL DEMANDED |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:23-cv-00051 |
| | ) | |
| Valley Health System, | ) | |
| | ) | |
| c/o Walter P. Sowers, II | ) | |
| Registered Agent | ) | |
| Valley Health System | ) | |
| 220 Campus Blvd., Suite 420 | ) | |
| Winchester, VA, 22601 | ) | |
| | ) | |
| **Defendant** | ) | |

**COMPLAINT**

**INTRODUCTION**

1. Kayla Cox is a registered nurse who worked for Valley Health System ("Valley Health") from 2013 until 2021.

2. She had sincerely held religious beliefs that prevented her from receiving the COVID-19 vaccine, which Valley Health mandated for its employees in summer of 2021.

3. She submitted a timely request for a religious exemption, which many of her co-workers received, but she did not.

4. In September of 2021, Valley Health fired her in violation of the Virginia Human Rights Act.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction, and venue is proper, pursuant to Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e-5(f)(3). The Valley Health facility where Ms. Cox worked is located in Winchester, VA.

6. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367 and Virginia Code §§ 8.01-620 and 8.01-328.

7. Ms. Cox received her "Right to Sue" letter from the EEOC and has exhausted his administrative remedies under both Title VII and the Virginia Human Rights Act. *McIntyre-Handy v. West Telemarketing Corp*. 97 F. Supp. 2d 718 at726 (E.D.Va, 2000). *See also*, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

7. Plaintiff Kayla Cox is a registered nurse who worked for Valley Health from 2013 until September, 2021. She worked as AM (morning) Admissions at VHS' Winchester Medical Center at 1840 Amherst Street in Winchester, VA.

8. Defendant Valley Health System is the largest health care system in the Northern Shenandoah Valley region, serving over 500,000 people and operating six hospitals, eight urgent care centers, six wellness and fitness centers, and thirty primary care locations, including home health and medical transport. It employs over 6,000 people and is headquartered at 220 Campus Boulevard in Winchester, Virginia.

## FACTUAL BACKGROUND

9. Plaintiff was an employee in good standing as of July 19, 2021, when, after several company-wide emails indicating that Valley Health was considering the implementation of a workforce-wide COVID-19 vaccination mandate, it took the formal step of announcing such a mandate. It did so by a memo from Mark Nantz, President and CEO of Valley Health, which Valley Health administration emailed company-wide.

10. In that memo, Mr. Nantz announced that:

> All VHS Employees…will be required to be fully vaccinated (single dose or both doses of a two-dose regimen) no later than November 1, 2021. In order to be fully vaccinated by the deadline, employees must receive their first dose by October 1, 2021.

11. The memo also provided for exemptions: "Staff who are not able to be vaccinated for medical or religious reasons may request to be considered for an exemption. Exemption requests will be carefully and confidentially evaluated." Valley Health set a deadline of August 16, 2021, for submission of the exemption requests and later provided forms for employees who were requesting an exemption to complete.

12. On August 5, 2021, Valley Health distributed another company-wide memo changing the relevant deadline for the first dose of the vaccine. In the memo, Mr. Nantz stated: "[…]Valley Health will now require that all remaining employees receive their first dose no later than September 7, 2021." In the same memo, he reiterated the availability of exemptions and stated, "Employees who plan to request a religious or medical exemption will still have until August 16 to file documentation [sic] and we anticipate review and resolution of all exemption requests by August 23."

13. Ms. Cox indicated to Valley Health in writing, using the forms Valley Health provided, that her religious beliefs have led her to the conclusion that she could not take COVID-19 vaccine. She stated:

> I am Christian. I love and worship God and His creation. I am grateful that God has led me to my position at Winchester Medical Center eight years ago and for the wonderful people I get to work with. I attend church and have done so my whole life. I am informed by the Scriptures in the Holy Bible and the Holy Spirit guides my interpretation of the Word of God. […]

> Psalm 118:8 states: It is better to take refuge in the Lord than to trust in man. I visit scripture for guidance on important decisions in my life, how I raise my family, how I treat others, my work ethic, and how I take care of my body and

soul. It is with this Divine counsel, that I assert my right to a religious exemption from vaccination. […]

Acts 28 alerts the reader to turn to God for salvation and healing. It urges me to be aware in a time of great confusion that others won't be able to see or hear the truth and one could be coerced into placing one's own body, the temple of the Holy Spirit, in peril.

She goes on,

I have given this great thought and deep prayer and have done my research and have used the CDC's own data to understand that there are substantial established risks, and what those risks tend to be[…]With the potential risks of toxicity, and adhering to my divine and God given right, I hereby decline to be vaccinated and appeal for my right to religious exemption that I might continue to thrive in the job I am trained to do and work with the wonderful people I am now engaged with.

14. She also met with her pastor at New Life Christian Church and obtained from him a letter which she provided to Valley Health. New Life Christian Church describes itself as "a non-denominational church most closely associated with the Restoration Movement, often called the Christian Church/Church of Christ."[1]

15. Although many Valley Health employees received an exemption,[2] Ms. Cox did not receive one.

16. One of the employees who received an accommodation was April Foreman, who was also an AM Admissions nurse.

17. Subsequently, Valley Health "Administratively Terminated" Ms. Cox, effective Wednesday, September 22, 2021.

**COUNT ONE**
**(Title VII Religious Discrimination: failure to accommodate)**

---

[1] http://newlife-christian.org/about-us/what-we-believe.

[2] Sarah Toy, *Why Some Healthcare Workers Would Rather Lose Their Jobs Than Get Vaccinated*, WSJ.COM, (Oct. 22, 2021), at https://www.wsj.com/articles/covid-19-vaccinations-healthcare-workers-refuse-risk-jobs-11634915929.

18. All preceding paragraphs are fully incorporated as if set forth herein.

19. Under Title VII, a plaintiff alleging religious discrimination based on a failure to accommodate:

> [M]ust first set forth a *prima facie* case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996); *cited in Gonzalez v. Hogg Ins. Group, Inc.*, (E.D.Va, 2012).

20. As the Supreme Court has stated,

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." […] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

> *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

21. The word "religion" is defined to "includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to" a "religious observance or practice without undue hardship on the conduct of the employer's business." 42 USCS § 2000e(j).

22. "An employer has a statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008), quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977).

23. The Supreme Court recently clarified that an employer has demonstrated an undue hardship "when a burden is substantial in the overall context of an employer's business." That inquiry it described as "fact-specific." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, *28 (2023).

24. Furthermore, "the refusal even to attempt to accommodate an employee's religious requests, prior to the employee's violation of employment rules and sanction, provides some indication, however slight, of improper motive on the employer's part." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1020-1021 (4th Cir. 1996).

25. Ms. Cox expressed to Valley Health that her religious beliefs prohibit her from accepting the COVID-19 vaccine.

26. Valley Health failed to accommodate Ms. Cox and offered no explanation as to why her continued presence in the workplace would be considered an undue hardship, particularly in light of the other individuals that Valley Health accommodated.

27. Valley Health went on to fire her, thus discriminating against her on the basis of her religion in violation of the Civil Rights Act.

28. Ms. Cox filed complaints with Equal Employment Opportunity Commission.

29. She received a Notice of Right to Sue from the EEOC on May 9, 2023.

## PRAYER FOR RELIEF

30. All preceding paragraphs are fully incorporated as if set forth herein.

31. Pursuant to Virginia Code § 2.2-3908(B), plaintiff requests the following relief:

a. Compensatory damages, including back pay and emotional distress, in the amount of $150,000.

b. Attorneys fees and costs.

c. All other damages appropriate under the circumstances.

**JURY TRIAL**

Plaintiff requests a jury trial.

Respectfully Submitted,

Kayla Cox

_____

By Counsel

E. Scott Lloyd
Virginia Bar # 76989
Lloyd · Lemmon, PLLC
15 Chester Street
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlemmon.com
Counsel for the Plaintiff