CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 28, 2024

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KAYLA COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:23-cv-00051 |
| | ) |
| VALLEY HEALTH SYSTEM, | ) By: Elizabeth K. Dillon |
| | )      United States District Judge |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff Kayla Cox brought this action against Valley Health System (Valley Health) alleging that Valley Health failed to accommodate her religious beliefs and discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and in violation of the Virginia Human Rights Act (VHRA) § 2.2-3900.  Pending before the court is Valley Health's motion to dismiss all counts for failure to state a claim.  (Dkt. No. 14).  After briefing (Dkt. Nos. 15–17) and oral argument, Cox also submitted a supplemental brief, which the court has considered.  (Dkt. No. 25.)  The motion is ripe for resolution.  For the reasons stated herein, the court will grant Valley Health's motion to dismiss.  Counts I and II will be dismissed with prejudice, and Counts III and IV will be dismissed without prejudice.

I. BACKGROUND[1]

Valley Health hired Cox as a registered nurse in 2013.  (Am. Compl. ¶ 1, Dkt. No. 11.)  On July 19, 2021, and in response to the COVID-19 pandemic, Valley Health enacted a policy that required its employees to receive the COVID-19 vaccination.  (*Id.* ¶ 19.)  The policy

---

[1] The following facts are drawn from Cox's amended complaint and are accepted as true for the purposes of ruling on the motion to dismiss.

required that employees receive their first dose before October 1, and it included a deadline of August 16 to submit religious or medical exemption requests. (*Id.* ¶¶ 21–22.) On August 5, Valley Health moved the deadline to receive a first dose of the COVID-19 vaccine to September 7. (*Id.* ¶ 23.) However, the August 16 deadline to submit exemption requests did not change. (*Id.*)

At the time of the relevant events and for several years prior, Cox and her husband were members of New Life Christian Church (New Life), a "non-denominational church most closely associated with the Restoration Movement." (*Id.* ¶ 13 (citing New Life Christian Church, *What We Believe*, https://new life-christian.org/about-us/what-we-believe (last visited June 10, 2024))). Cox attended services every Sunday and was a member of the "Welcoming / Greetings" team. (Am. Compl. ¶¶ 14–15.) During the pandemic, New Life's lead pastor instructed his congregants to "do their research, speak with their own medical providers, cover their process in prayer and then decide" whether to take the COVID-19 vaccine. (*Id.* ¶¶ 18, 30–31.) Cox and her husband met with the pastor to discuss Valley Health's vaccine mandate. (*Id.* ¶ 24.)

After following her pastor's advice, Cox decided not to receive the COVID-19 vaccine "based on her religious convictions." (*Id.* ¶ 26.) Cox filed an accommodation request using Valley Health's official form and outlined her process to conclude she would not take the vaccine. (*Id.* ¶ 27.) She stated in part,

> I am a Christian. I love and worship God and His creation. . . . I attend church and have done so my whole life. I am informed by the Scriptures in the Holy Bible. . . . Every person has the right to be autonomous about his or her life. It is our God-given ability to exercise that right with free will. I visit scripture for guidance on important decisions in my life. . . . It is with this Divine counsel, that I assert my right to a religious exemption from vaccination . . . .

2

> [T]he CDC's own vaccine injury reporting site . . . *shows a substantial number of deaths and injury after vaccination with Covid* [sic] *vaccines.*
>
> Autonomy means self-law. . . . Patients can refuse treatments they don't want, even if the doctors believe treatment would be beneficial. Certainly to give a patient treatment without consent, or against his or her wishes, constitutes as [sic] *assault.* . . .
>
> Today's emphasis on patient autonomy reacts against the previous culture of 'doctor knows best.'. . . Asserting autonomy has helped . . . empower patients, as well as reminding doctors not to misuse their position of power. However, this should not only include patients but employees as well.
>
> I have given this great thought and deep prayer and *have done my research and used the CDC's own data to understand that there are substantial established risks, and what those risks tend to be*. The only claim that can be legitimately made about the Covid vaccines is that they, at this point, are completely experimental. Per the manufacturer's own information these experimental vaccines never sought to nor do they provide sterilizing immunity and so the thought that they might allow me to protect others around me is moot. They were designed as symptom reducers only. *With the potential risks of toxicity,* and adhering to my divine and God given right, I hereby decline to be vaccinated and appeal for my right to religious exemption. . . .
>
> Be compassionate to your employees by respecting other's beliefs, opinions, and *body choices*. . . . I trust that my sincere religious beliefs will be respected in this matter."

(Am. Compl. Ex. A, Dkt. No. 11-1 (Req. Ltr.) (emphasis added).)  Cox also submitted a letter from her lead pastor as part of her religious exemption request, which explained his advice to his congregants.  (*Id.* ¶¶ 29–30.)  In part, the letter stated,

> I can attest to this person's deeply held belief that receiving any of the COVID-19 vaccinations would violate their religious beliefs. . . . *By taking a vaccine that is not yet fully approved*, they would be elevating the government (and an employer's) rights to make decisions for their body above God's sovereignty over their life.

(Am. Compl. Ex. B, Dkt. No. 11-1 (Pastor Ltr.) (emphasis added).)

3

Valley Health's review board denied Cox's request for a religious accommodation. (*Id.* ¶¶ 32, 34.) Cox did not receive the vaccine, and Valley Health "administratively terminated" her on September 22. (*Id.* ¶ 38.)

Cox filed a complaint against Valley Health with both the Equal Employment Opportunity Commission (EEOC) and the Virginia Attorney General's Office of Civil Rights (OCR). (*Id.* ¶ 43.) Cox received the EEOC's Determination and Notice of Rights on May 9, 2023, and OCR's Notice of a Right to File a Civil Action on August 11, 2023. (*Id.* ¶¶ 44–45.)

Cox then filed suit in this court. Her complaint contains four claims alleging violations of Title VII and the VHRA. Counts I and II allege that Valley Health failed to accommodate Cox's religious beliefs under Title VII and the VHRA, respectively. Counts III and IV allege that Valley Health discriminated against her in violation of Title VII and the VHRA, respectively. Defendant Valley Health moves to dismiss the complaint in its entirety, arguing that Cox fails to state a claim under all four counts.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of

4

action will not do." *Twombly*, 550 U.S. at 555. The court must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). However, pleadings which are conclusory "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

The Fourth Circuit has made clear that the pleading standards established in *Twombly* and *Iqbal* apply to claims of discrimination. *Woods v. City of Greensboro*, 855 F.3d 639, 647–48 (4th Cir. 2017) (citing *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 583–85 (4th Cir. 2015)). Although a plaintiff is "not required to 'plead facts establishing a *prima facie* case of discrimination to survive a motion to dismiss,'" he is "nonetheless 'required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute in compliance with *Iqbal*." *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585) (alteration in original). Thus, the question at this stage of the proceedings is whether the plaintiff "has offered sufficient factual allegations to support a plausible claim" under Title VII and the VHRA. *Id.*

Notably, Valley Health made its decision to deny Cox's religious accommodation based on her request *alone* and did not have the benefit of her complaint. Therefore, the court looks to Cox's religious accommodation request forms to determine if Cox's stated beliefs are religious in nature sufficient to require religious accommodation.[2] *See Aliano v. Twp. of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at *11 (D.N.J. July 7, 2023).

---

[2] Moreover, a party may not amend its complaint through briefing, so the court looks only to the complaint in this case for factual allegations. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

### B. Cox Has Not Adequately Pled Failure-to-Accommodate Claims under Title VII and the Virginia Human Rights Act.

#### 1. Failure to accommodate under Title VII

To state a claim based on a failure to accommodate religious beliefs under Title VII, a plaintiff establishes a *prima facie* case by showing that (1) she had a bona fide religious belief that conflicted with an employment requirement, (2) she informed the employer of this belief, and (3) she was disciplined for failure to comply with the conflicting employment requirement. *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996).  Moreover, Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's. . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

Though a religious belief need not be "acceptable, logical, consistent, or comprehensible to others" under Title VII, the plaintiff must make an "assertion of sincere religious belief." *Keene v. City & Cnty. of San Francisco*, No. 4:22-cv-01587 (JSW), 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (citing *Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981)).  Further, "sincere religious beliefs" must be "religious in nature." *Ellison v. Inova Health Servs.*, 692 F. Supp. 3d 548, 558 (E.D. Va. 2023).  Many courts, including district courts in the Fourth Circuit, have adopted the *Africa* framework to determine the religious nature of a plaintiff's beliefs.[3]  *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).  Though the Fourth Circuit has not adopted the

---

[3] *E.g.*, *Ellison v. Inova Health Servs.*, 692 F. Supp. 3d 548, 558 (E.D. Va. 2023) (adopting the *Africa* framework to determine if a "sincere religious belief" is "religious in nature"); *Foshee v. AstraZeneca Pharms.*, No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023) (using the *Africa* factors to distinguish between secular and religious beliefs).  *But see Shigley v. Tydings & Rosenberg*, No. CV JKB-23-02717, 2024 WL 1156613, at *3 n. 3 (D. Md. Mar. 18, 2024) (choosing not to adopt the *Africa* framework in considering whether plaintiff's religious beliefs were "sincerely held" and "religious in nature") (citations omitted).

*Africa* framework, the court believes it provides useful guidance and will employ it here.[4] This framework requires religious beliefs to (1) "address a fundamental and ultimate question having to do with deep and imponderable matters," (2) be "comprehensive in nature" and (3) be recognized by "the presence of certain formal and externals signs." *Id.* at 1032.

Cox must show how "receiving the COVID-19 vaccine would violate [her] beliefs." *See Aliano*, 2023 WL 4398493, at *11. Moreover, "[c]onclusory allegations that a belief is religious are . . . insufficient; rather, a plaintiff must allege *how* her objection is based upon a *religious* belief." *Id.* (emphasis in original). Other federal courts, in dealing with similar cases, have required a clear, unambiguous statement of how the vaccine violates a tenet of the individual's faith. *Id.* at *6 ("[I]t is [plaintiff]'s subjective religious belief that is protected, so [plaintiff] must provide information concerning the religious nature of his own belief and how his objection to the COVID-19 vaccine is connected to that belief."); *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 492 (3d Cir. 2017) (holding that the plaintiff's bases for refusing an influenza vaccine were medical, not religious, when he merely stated his belief that "one should not harm their [sic] own body and strongly believes that the flu vaccine may do more harm than good") (alteration in original); *Ellison*, 692 F. Supp. 3d at 559. In *Ellison*, for example, the court denied defendant's motion to dismiss because plaintiff's accommodation request forms "provide[d] sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to the COVID-19 vaccination." 692 F. Supp. 3d at 549.

---

[4] The *Africa* test is flexible, 662 F. 2d at 1032 n.13, and the religious inquiry of a plaintiff's beliefs is necessarily individualized, *Menk v. MITRE Corp.*, No. 23-00053-JRR, 2024 WL 327087, at *15 (D. Md. Jan. 29, 2024) (citations omitted). Having conducted an individualized inquiry into Cox's stated beliefs, the court would reach the same result without using *Africa* framework.

To be sure, when a plaintiff *adequately explains* the connection between the plaintiff's religious belief and her objections to the COVID-19 vaccine, other courts have upheld religious exemptions. *See Aliano*, 2023 WL 4398493, at *10 (denying a motion to dismiss where a plaintiff's religious accommodation request form stated "[A]s a Christian, I cannot according to my beliefs and conscience, use these products that have origins in abortion."); *Ellison,* 692 F. Supp. 3d at 559 (holding that a plaintiff "adequately linked his objection to a sincerely held religious belief" when he stated "life begins at conception," "every life is sacred," and "[a]ction that would . . . generate a future demand for fetal cell tissue, violates the core religious beliefs that [he] hold[s] dear") (alterations in original). Cox similarly identified that she belonged to an organized religion, sought out scriptures and prayers to guide her decision, and concluded that she could not receive the vaccine. (Am. Compl. ¶ 26.) *See Aliano*, 2023 WL 4398493, at *10.

However, Cox's stated objections to the vaccine primarily rested upon her right to "body autonomy" and "patient rights," rather than on her religious beliefs. (Req. Ltr.) In fact, even her church's lead pastor did not state expressly that his congregants should not receive the vaccine because of a *moral* or *religious* reason. (Pastor Ltr.) Rather, the pastor stated that his consistent position was "that each individual should have the *choice* to take the vaccine or to not take the vaccine," and he encouraged each congregant to do their research, "cover their process in prayer," and come to their *own* conclusion. (*Id.*; Am. Compl. ¶ 18 (emphasis added).) After following this advice, Cox determined that accepting the vaccine was tantamount to violating her bodily autonomy and would cause her unnecessary risk because of the "number of deaths and injury after vaccination" with the COVID-19 vaccine. (Req. Ltr.) The pastor's letter in support also evoked language of the right to bodily autonomy when he equated "taking a vaccine that is

not yet fully approved" to "elevating the government (and an employer's) rights to make decisions for their body."  (Pastor Ltr.)

Similarly, in the letter in which she asserted her right to religious exemption, most of Cox's statements were entirely unrelated to her religion or religious beliefs.  (Req. Ltr.)  Instead, she focused on the CDC's data, the manufacturer's statements regarding the vaccine's efficacy, and her right to "body choices" [sic].  (*Id.*)  Such statements did not "address fundamental and ultimate questions having to do with deep and imponderable matters," nor were they "comprehensive in nature."  *Africa*, 662 F.2d at 1032.  Moreover, she "couched [her] request in religious terms, claiming that [her] decision[] had been ratified by prayer.  But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion."  *Passarella v. Aspirus, Inc.*, No. 1:23-cv-00132, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) (dismissing claims of religious discrimination where the plaintiffs' objections to vaccination were medical, not religious, even though the plaintiffs had prayed to reach their decisions).

Cox further did not allege any religious belief which "would prevent her from taking the vaccine if she believed it was safe."  *See id.* at *5.  Cox's documents merely inform Valley Health that she refused the vaccine because of her *personal medical* judgments regarding the efficacy and safety of the vaccine, *not* because of her religious convictions.  *See id.*; *see also Fallon*, 877 F.3d at 492 (holding that the plaintiff's bases for refusing an influenza vaccine were medical, not religious, when he merely stated "one should not harm their [sic] own body and [he] strongly believe[d] that the flu vaccine may do more harm than good"); *Aliano,* 2023 WL 4398493, at *5 ("Beliefs that are effectively medical in nature or amount to an 'isolated moral

9

teaching' are insufficient to state a religious belief for purposes of Title VII") (quoting *Africa* 662 F.2d at 1032). All of Cox's objections are

> about personal autonomy, as well as the safety and efficacy of the vaccine . . . intermingled with moral and religious language that taking the vaccine would violate [her] conscience [and] be inconsistent with God's wishes. . . . [P]laintiff did not tie those general statements to any particular religious belief or practice that was inconsistent with taking the vaccine.

*Bube v. Aspirus Hosp., Inc.*, No. 22-cv-745-jdp, 2023 WL 6037655, at * 4 (W.D. Wis. Sept. 15, 2023).

Moreover, employees are not entitled to "blanket exemptions" to "make unilateral decisions" about job requirements with which they will comply, "even where religion is expressly invoked in communicating beliefs." *Shigley v. Tydings & Rosenberg*, No. JKB-23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024) (citing *Foshee v. AstraZeneca Pharms.*, No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023)). "While an employer has a duty to accommodate an employee's religious beliefs, [it] does not have a duty to accommodate an employee's preferences," such as Cox's personal health preference to not receive the vaccine. *See Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001).

For the reasons above, the court will dismiss with prejudice Count I against Valley Health for alleged failure to accommodate Cox's religious beliefs in violation of Title VII.

2. **Failure to accommodate under the Virginia Human Rights Act**

As to Count II, the parties disagree over whether the VHRA requires an employer to accommodate religious beliefs. Valley Health relies for support on *Ellison*, 692 F. Supp. 3d at 554, which held that the VHRA's plain language did not obligate a court to accommodate religious beliefs. (Def.'s Mot. Dismiss, Dkt. No. 15.). The court in *Ellison* focused on the Virginia General Assembly's addition of "failure to accommodate" language for pregnant

10

employees (in 2020) and disabled employees (in 2021), and the *absence* of such language in the subsequently modified religious discrimination section. 692 F. Supp. 3d at 554.

However, while the parties disagree over the VHRA's requirements for religious accommodation, neither party suggests that the court should apply a test other than the Title VII test for failure to accommodate. Thus, the court need not reach the issue of whether the VHRA provides a cause of action for a failure to accommodate religious beliefs because Cox failed to allege a *religious* objection to the vaccination mandate, as discussed above.

For the same reasons it dismissed Cox's Title VII failure-to-accommodate claim, the court likewise will dismiss with prejudice Count II against Valley Health for alleged failure to accommodate Cox's religious beliefs in violation of the VHRA.

### C. Cox Has Not Adequately Pled Disparate Treatment Claims under Title VII and the Virginia Human Rights Act.

In Counts III and IV, Cox asserts claims of disparate treatment under Title VII and the VHRA.[5] To state such a *prima facie* claim, Cox must prove the following elements: (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class.[6] *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

---

[5] As the parties agree, the VHRA disparate treatment claim should be analyzed under the same framework as the Title VII disparate treatment claim. *See Lundberg v. Delta Response Team*, No. 3:23-cv-42, 2024 WL 1676806, at *3 (W.D. Va. Apr. 18, 2024) (analyzing both Title VII and the VHRA disparate treatment claims under the Title VII framework); *Brackney-Wheelock v. City of Charlottesville*, 652 F. Supp. 3d 603, 633 (W.D. Va. 2023) (dismissing a VHRA claim for disparate treatment when plaintiff's claim was premised on the same conduct as her Title VII claim, which the court also dismissed).

[6] As discussed herein, Cox failed to adequately establish sufficient comparators. Thus, the court need not determine whether Cox adequately pled the other elements.

11

A similarly situated employee must be outside of the protected class and treated differently than the plaintiff. *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F. 4th 707, 714 (4th Cir. 2024). Cox must "provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly-situated [sic] *in all respects*.'" *Id.* (quoting *Spencer v. Va. State Univ.*, 919 F. 3d 199, 207–08 (4th Cir. 2019) (citation omitted) (emphasis in original). Such similarities include the same supervisor, engaging in similar conduct without differentiating or mitigating circumstances, and that employees were subject to the same employment standards. *Id.* (citing *Haynes v. Waste Connections, Inc.*, 922 F. 3d 219, 223–24 (4th Cir. 2019.) Moreover, the "similarities between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Id.* (quoting *Lightner v. City of Wilmington*, 545 F. 3d 260, 265 (4th Cir. 2008)).

Here, Cox offers three individuals as comparators, but she does not clearly establish meaningful similarities between herself and any comparator. The first comparator, April Foreman, held the same position as Cox and received an accommodation to the vaccine mandate. (Am. Compl. ¶ 35.) However, Cox does not allege whether Foreman received a religious or medical accommodation. (*Id.*) Another, unnamed employee received a religious accommodation after she connected her beliefs about abortion to her religious beliefs and explained how taking the vaccine would violate those beliefs. (*Id.* ¶ 36.) However, Cox does not allege *any* shared characteristics or beliefs between herself and this unnamed person. (*Id.*) Finally, Brittany Watson serves as the last comparator; and like Cox, Watson also submitted a letter from a church leader in support of her religious accommodation request. (*Id.* ¶ 95.) However, Watson's stated beliefs are substantially different from Cox's stated beliefs. (*Compare* Req. Ltr. *with* Am. Compl. Ex. C, Dkt. No. 11-1 (Watson Ltr.).) Watson notes that

her beliefs include the sanctity of human life, that the "vaccine is made from aborted fetus [sic]," and other religious beliefs. (Watson Ltr.) In contrast, Cox states her medical and political concerns with the vaccine (particularly the perceived violation of her bodily autonomy) which she further couched in religious terms. (Req. Ltr.) Cox does not mention abortion or other similar beliefs to any of these comparators. (*Id.*) Because of the lack of similarly situated comparators, Cox has failed to plead a disparate treatment claim.

For the reasons above, the court will dismiss without prejudice Counts III and IV against Valley Health for alleged disparate treatment in violation of Title VII and the VHRA, respectively.

### III.  CONCLUSION

For the foregoing reasons, the court will grant Valley Health's motion to dismiss and will dismiss all four counts of the complaint. The court will dismiss with prejudice Counts I and II for failure to accommodate under Title VII and the VHRA because Cox could not provide additional factual allegations in her complaint to remedy its deficiencies. *See Aliano*, 2023 WL 4398493, at *11 (noting that plaintiff cannot "cure the fundamental deficiency" in his complaint and granting the motion to dismiss with prejudice); *Fallon*, 877 F.3d at 489 (affirming the district court's dismissal with prejudice "because amendment would be futile"). The court will dismiss without prejudice Counts III and IV for alleged disparate treatment under Title VII and the VHRA. The court will issue an appropriate order.

Entered: June 28, 2024

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

13